1  John W. Storer, III—State Bar I.D. No. 010478
2  Michael J. Frazelle—State Bar I.D. No. 006076
   SWENSON, STORER, ANDREWS
3  & FRAZELLE, P.C.
   7310 N. 16th Street, Suite 320
4  Phoenix, Arizona 85020-5276
   jstorer@swensonlaw.com
5  mfrazelle@swensonlaw.com
   Telephone:    (602) 274-4778
6  Facsimile:    (602) 274-5911
7  Attorneys for Plaintiffs Fahad Al-Rajhi and Jood, Ltd.

8

9              IN THE UNITED STATES DISTRICT COURT

10             FOR THE DISTRICT OF ARIZONA

11

12  Fahad Al-Rajhi and Jood, Ltd.,        )   Case No.
                                          )
13              Plaintiffs,               )
                                          )
14        v.                              )   **Complaint For Damages**
                                          )
15  Mayfair Holdings, LLP; Mayfair        )
16  Administration, LLC; Mayfair Real Estate )
    LP; Mayfair Finance Group, LLP; Mayfair )   Jury Trial Demanded
17  Finance, LLP; Stuart Horwich; Leon    )
    Dutkiewicz and Michael D. Evans,      )
18                                        )
19              Defendants.               )
                                          )
20  _____ )

21        COME NOW Plaintiffs, FAHAD AL-RAJHI ("Al-Rajhi") and JOOD, LTD. ("Jood")

22  (referred to collectively herein as "Plaintiffs"), seeking damages from Defendants MAYFAIR

23  HOLDINGS, LLP, MAYFAIR ADMINISTRATION, LLC, MAYFAIR REAL ESTATE LP,

24
    MAYFAIR FINANCE GROUP, LLP, MAYFAIR FINANCE, LLP, STUART HORWICH
25
    ("Horwich"), LEON DUTKIEWICZ ("Dutkiewicz") and MICHAEL D. EVANS ("Evans")
26

(referred to collectively herein as "Defendants") resulting from a fraudulent scheme orchestrated by Defendants under which Defendants, in addition to other wrongful acts and omissions, solicited money investments from Plaintiffs to undertake a real estate investment scheme in and around Phoenix, Arizona and promised to repay Plaintiffs the principal invested in addition to a specific amount of interest on the amount invested. Defendants have not paid Plaintiffs the amounts promised to Plaintiffs and continue to perpetrate other wrongful acts to the detriment of Plaintiffs.

## THE PARTIES

1.      Defendant Mayfair Holdings, LLP, is a corporation organized under the laws of the State of Delaware with its principal offices located in Phoenix, Arizona. Mayfair Holdings LLP currently conducts business under other names, including, but not limited to Mayfair Administration LLC, Mayfair Real Estate LP, Mayfair Finance Group, LLP and Mayfair Finance LLP.

2.      Defendant Mayfair Administration, LLC, is a corporation organized under the laws of the State of Delaware, with its principal offices located in Pitman, New Jersey, which regularly conducts business transactions in Phoenix, Arizona.

3.      Defendant Mayfair Real Estate, LP, is a partnership organized under the laws of the State of Delaware with its principal offices located in Wilmington, Delaware, which regularly conducts business and has an office in Phoenix, Arizona. Defendant Mayfair Finance

. . .

2

Group, LLP, is a corporation organized under the laws of the State of Delaware, with its principal offices located in Phoenix, Arizona.

4.      Defendant Mayfair Finance Group, LLP is a corporation organized under the laws of the State of Arizona, with its principal offices located in Phoenix, Arizona.

5.      Defendant Mayfair Finance, LLP is a corporation organized under the laws of the State of Arizona, with its principal offices located in Phoenix, Arizona.

6.      Defendant Michael D. Evans is a citizen of the United Kingdom with a business visa to work in the United States who resides in Scottsdale, Arizona.  Evans is the founder of the Mayfair entities and personally induced investments and loans for the Mayfair entities.

7.      Defendant Stuart Horwich is upon information and belief, a citizen of the United States who resides in the United Kingdom.  Defendant Horwich is an attorney who advised Defendant Evans, and participated individually, in the formation and operation of the Mayfair entities.  Defendant Horwich is also a partner of Pitman Property Management, which advised and assisted Defendants with various issues and activities.

8.      Defendant Leon Dutkiewicz, is upon belief, a citizen of the United States, who resides in New Jersey and regularly conducts business throughout the United States, including Arizona. Defendant Dutkiewicz is an accountant who advised Defendants Evans and Horwich, and participated individually, in the formation and operation of the Mayfair entities. Specifically, Defendant Dutkiewicz prepared and filed tax returns on behalf of Defendants.

. . .

3

9.      Defendant Dutkiewicz is also a partner in Pitman Property Management, which advised and assisted Defendants with various issues and activities.

10.     Plaintiff Fahad Al-Rajhi is a citizen of Saudi Arabia who resides in Saudi Arabia and who regularly conducts business in the United States.

11.     Jood, Ltd., is a corporation organized under the laws of the British Virgin Islands and wholly owned by Plaintiff Al-Rajhi.

## VENUE AND JURISDICTION

12.     The Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states and citizens of a foreign state.

13.     At all times material herein, Defendant Mayfair Holdings, LLP has been authorized to conduct business in the State of Arizona, has regularly solicited business and derived substantial revenue from goods used/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an act or omission in the State of Arizona.  Mayfair Holdings, LLP, can be served with the summons and a copy of the complaint in this matter via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

14.     At all times material herein, Defendant Mayfair Administration, LLC, through its associated company, Mayfair Holdings, LLP, has transacted business in the State of

4

Arizona, has regularly solicited business and derived substantial revenue from goods used and/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an act or omission in the State of Arizona. Mayfair Administration, LLC can be served with a summons and a copy of this complaint via its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

15.    At all times material herein, Mayfair Real Estate LP, through its associated company, Mayfair Holdings, LLP, has transacted business in the State of Arizona, has regularly solicited business and derived substantial revenue from goods and/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an act or omission in the State of Arizona. Mayfair Real Estate, LP, can be served with a summons and a copy of this complaint via its registered agent, Corporation Service Company, 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021.

16.    At all times material herein, Defendant Mayfair Finance Group, LLP, through its associated company, Mayfair Holdings, LLP, has transacted business in the State of Arizona, has regularly solicited business and derived substantial revenue from goods and/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an act or omission in the State of Arizona. Mayfair Finance Group, LLP can be served with a summons and a copy of

5

this complaint via its registered agent, Corporation Service Company, 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021.

17.     At all times material herein, Defendant Mayfair Finance, LLP, through its associated company, Mayfair Holdings, LLP, has transacted business in the State of Arizona, has regularly solicited business and derived substantial revenue from goods and/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an act or omission in the State of Arizona.  Mayfair Finance, LLP can be served with a summons and a copy of this complaint via its registered agent, Corporation Service Company, 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021.

18.     At all times material herein, Defendant Evans has transacted business in the State of Arizona, has regularly solicited business and derived substantial revenue from goods used and/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an act or omission in the State of Arizona.  Evans can be served at his personal residence in Scottsdale, Arizona or in the United Kingdom at Queensbury House, 3 Old Burlington Street, Mayfair, London W1S 3AE.

19.     At all times material herein, Defendant Horwich has derived revenue from goods used and/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an

6

act or omission in the State of Arizona.  Horwich can be served in the United States at 199 North Woodbury Road, Suite 103, Pitman, New Jersey 08071 or in the United Kingdom at 6-7 Hatton Gardens, 3rd Floor, London, ECIN 8AD.

20.    At all times material herein, Defendant Dutkiewicz has derived revenue from goods used and/or services rendered in the State of Arizona, committed a tortious act or omission in the State of Arizona, and/or committed a tortious injury in the State of Arizona caused by an act or omission in the State of Arizona.  Dutkiewicz can be served in the United States at 199 North Woodbury Road, Suite 103, Pitman, New Jersey 08071.

21.    Plaintiffs invested with and loaned money to Defendants to receive profits based on the purchase and sale of real property within the jurisdiction of this Court.

## FACTS SUPPORTING PLAINTIFFS' CLAIMS

22.     Based on present information and belief, on or around April 2012, Defendant Evans, through and on behalf of his businesses Evans Randall and Mayfair Finance Group, initially approached Plaintiff Al-Rajhi to solicit an investment of money for a real estate scheme involving the purchase and resale of distressed real estate in and around Phoenix, Arizona.  The real estate scheme (referred to hereinafter as "Mayfair Scheme") was devised by Defendant Evans, implemented with the assistance and counsel of Defendants Horwich and Dutkiewicz and consisted of various entities, including but not limited to Mayfair Holdings, L.P., Mayfair Administration, LLC, Mayfair Finance, LLP, Mayfair Real Estate, LP, and Mayfair Property Management, LLP.

7

23.    On or around May, 2012, Defendant Evans, in an effort to induce Plaintiff Al-Rajhi to make an investment, wrote to Plaintiff Al-Rajhi and stated that the Mayfair Scheme would involve "no debt" and be "funded by my equity." Defendant Evans, in the same correspondence, stated that Mayfair Scheme would yield "a 12% cash on cash return plus capital growth" and "up to 15% to 20% (potentially more)."

24.    Upon reliance of the promises made by Defendant Evans, including but not limited to the minimum rate of return promised by Defendant Evans, on or about June, 2012, Plaintiff Al-Rajhi agreed to loan a total of at least $2,500,000.00 into the Mayfair Scheme, which was made up of at least two separate loans. Plaintiff Al-Rajhi's investment was sent to and deposited in the account of Mayfair Finance, an entity devised, structured and set up by Defendants Evans, Horwich and Dutkiewicz.

25.    On or about June 27, 2012, in an effort to facilitate Plaintiff Al-Rajhi's investment, a Partnership Agreement was entered into by Mayfair Real Estate, LP, an entity solely controlled by Defendant Evans through Mayfair Finance, LLP, and Plaintiff Al-Rajhi to form Mayfair Holdings, LLP. This agreement was signed by Defendant Evans on behalf of Mayfair Real Estate, LP and Defendant Horwich on behalf of Mayfair Administration, LLC, which was named the initial manager of Mayfair Holdings, LLP.

26.    Mayfair Administration, LLC shares the same mailing address as the offices of Defendants Horwich and Dutkiewicz.

. . .

8

27.     Prior to entering into the partnership, it was represented to Plaintiff Al-Rajhi that Mayfair Holdings, LLP, would be the entity that would purchase the real estate in Arizona.

28.     According to the Partnership Agreement, 100% of the preferred, or Class A, shares of the partnership would be owned by Mayfair Real Estate, LP, and 50% of the ordinary, or Class B, shares would be owned by Plaintiff Al-Rajhi, with the remaining 50% of ordinary Class B shares being owned by Mayfair Real Estate, LP.

29.     Under the Partnership Agreement, Plaintiff Al-Rajhi has no voting rights in the partnership but is entitled to the right to inspect and copy all books and records of the partnership.  Furthermore, the Partnership Agreement provides that all Partners shall be provided an annual financial statement.

30.     Plaintiff Al-Rajhi has never been provided an annual financial statement from the partnership and his requests to inspect the books and records of the partnership have been ignored and/or refused.

31.     The Partnership Agreement further provides that the partnership shall be obligated to redeem all of the Class B Interests no later than the date that is five (5) years following the date of the Agreement or June 27, 2017.

32.     Contrary to the requirements of the Partnership Agreement, Plaintiff Al-Rajhi's Class B Interests have not been redeemed.

. . .

9

33.     Based on present information, it is believed that the Partnership Agreement was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

34.     On or about this same date, Defendant Mayfair Holdings, LLP, and Plaintiff Al-Rajhi entered into a Subscription Agreement which reflects an issuance of 250,000 class B ordinary shares of Mayfair Holdings, LLP, to Plaintiff Al-Rajhi in exchange for $250,000.00.  The Subscription Agreement was signed by Stuart Horwich on behalf of Mayfair Administration, LLC, as the Manager of Mayfair Holdings, LLP.

35.     Based on present information, it is believed that the Subscription Agreement was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

36.     On or about June, 2012, Mayfair Real Estate, LP, and Mayfair Holdings, LLP, entered into a Contribution Agreement whereby Mayfair Real Estate, LP, would transfer 100% of the interests in its wholly-owned subsidiaries, Mayfair Finance Group, LLP, and Mayfair Finance, LLP, to Mayfair Holdings, LLP, in exchange for all of the Class A Ordinary Interests in Mayfair Holdings, LLP.  Upon present information, it is believed that Defendant Evans wholly owns and controls Mayfair Finance, LLP and Mayfair Finance Group, LLP.  Under the Contribution Agreement, 250,000 Class A Interests and 3,750,000 of Preferred Interests in Mayfair Holdings, LLP, were transferred to Mayfair Real Estate. LP.

. . .

10

37.     Again, the addresses for noticing Mayfair Real Estate, LP and Mayfair Holdings, LLP, are both 199 N. Woodbury Road, Suite, 103, Pitman, New Jersey 08071.  This is the address used for offices by Defendant Horwich and Dutkiewicz.

38.     Based on present information, it is believed that the Contribution Agreement was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

39.     As part of his investment in the Mayfair Scheme, Plaintiff Al-Rajhi has made loans, totaling $2.5 million, to Mayfair Holdings, LLP.

40.     The first loan, for $2.25 million, was made by Plaintiff Al-Rajhi individually to Mayfair Holdings, LLP, and is memorialized in the Unsecured Subordinated Promissory Note dated June 27, 2012 (referred to hereinafter as "June Promissory Note").  The June Promissory Note was signed by Defendant Horwich on behalf of Mayfair Administration, LLC, who was identified as Manager of Mayfair Holdings, LLP and witnessed by Tareq Hawasli.  Defendant Mayfair Holdings, LLP is identified as the "Borrower" and Plaintiff Al-Rajhi is identified as the "Lender."

41.     The June Promissory Note provides for an Interest Rate of twelve percent (12%), to be paid in quarterly payments starting in June, 2012, on "Interest Payment Dates" identified as September 30, December 31, March 31 and June 30 of every year. The June Promissory Note further provides for a default interest rate of 5% for each day from an Event of Default until such Event of Default is cured.

. . .

11

42.     The June Promissory Note identifies an Event of Default as "… (i) the failure to make any Interest payment within five (5) business days of the applicable Interest Payment Date …" and "the commencement of any proceeding by or against the … (vi) Borrower … if such proceeding shall remain undismissed for a period of sixty (60) days from the date of the commencement of the same;".

43.     The June Promissory Note further provides "… Borrower shall have thirty days from the date such Event of Default first occurs to cure such Event of Default." and a failure to cure such Event of Default shall allow "… Lender, at its option, may declare all Borrower's obligations under this Note immediately due and payable..."  The June Promissory Note further provides "… no failure or delay by Lender in exercising any right, option or remedy shall be deemed a waiver thereof…"

44.     To date, no interest has been paid on the June Promissory Note. The total amount owed for missed interest is in excess of $1.1 million. Missed default interest would equal approximately an additional $506,000.00.

45.     On or about January 10, 2017, written notice of default and demand for repayment under the June Promissory Note was made by Plaintiff Al-Rajhi to Defendants Evans, Horwich and Dutkiewicz.  As of the present date, no payments have been received and no formal response has been sent by these Defendants.

46.     Based on present information, it is believed that the June Promissory Note was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

12

47.     On or around the time of the initial investment by Plaintiff Al-Rajhi, a Subordination Agreement was entered into by and among Aspen Services, LLC, Plaintiff Al-Rajhi, and Mayfair Holdings, LLP.  The agreement was signed by Defendant Horwich on behalf of both Aspen Services, LLC, and Mayfair Holdings, LLP.  The Subordination Agreement identifies a loan dated May 10, 2012, from Aspen Services, LLC, to Mayfair Holdings, LLP and attempts to place this loan in senior, or preferred, status above Plaintiff Al-Rajhi's initial investment.

48.     Upon information and belief, there is no loan from Aspen Services, LLC to Mayfair Holdings, nor does Mayfair Holdings owe any debt to Aspen Services, LLC.  In fact, according to the Mayfair Holdings, LLP, Partnership Agreement, Mayfair Holdings, LLP, was not in existence as of May 10, 2012, and therefore no such loan could have been made.

49.     The Subordination Agreement provides, in part, "… the Borrower may pay to the Subordinated Lender, and the Subordinated Lender may accept from the Borrower, regularly scheduled interest payments due under the subordinated loan documents ...".

50.     The Subordination Agreement further provides for the modification of the senior debt, allegedly the debt to Aspen Services, LLC, but not for the modification of the subordinated debt, allegedly the debt to Plaintiff Al-Rajhi.

51.     As written in the Subordination Agreement, the addresses where notices and other communications are to be sent to Aspen Services, LLC, and Mayfair Holdings, LLP, are

13

identical, being 199 N. Woodbury Road, Suite 103, Pitman, New Jersey 08071.  This is the address used for the offices of Defendants Horwich and Dutkiewicz.

52.     Based on present information, it is believed that the Subordination Agreement was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

53.     On or about July 5, 2012, at the suggestion and under the direction of Defendants Evans, Horwich and Dutkiewicz, Jood, Ltd., was established as an entity through which Plaintiff Al-Rajhi could continue investing in the Mayfair Scheme.  Jood is a limited company established in the British Virgin Islands and solely owned by Al-Rajhi. Jood, Ltd., was established and managed by individuals selected and directed by Defendants Evans, Horwich and Dutkiewicz.

54.     On or about October 25, 2012, Defendant Evans contacted Plaintiff Al-Rajhi in an effort to induce further investment into the Mayfair Scheme.  Evans reported to Plaintiff Al-Rajhi that the Mayfair Scheme had "Average Gross Yield: 12.51%" and "Gross Rental being received: $225K."  Evans further stated that "an amount of $2M to $5M might be appropriate" to "ensure that we have adequate funds to continue investing."

55.     On or about November 29, 2012, Defendant Evans again contacted Plaintiff Al-Rajhi in an effort to induce further investment into the Mayfair Scheme.  On this date, Evans stated that Mayfair had an "increased value at $7.8M compared to the figure of $6.5M at which you came in" and he hoped for "an increase of circa $1.3M."  Evans concluded his correspondence by requesting an additional $250,000.00 from Plaintiff Al-Rajhi.

14

56.     On or about November, 30, 2012, Plaintiff Al-Rajhi, through his newly formed entity Jood, Ltd., made a second loan to Mayfair Holdings, LLP.  The second loan was for a total of $250,000.00 and evidenced by a promissory note dated November 30, 2012 (referred to hereinafter as "November Promissory Note").  The November Promissory Note was signed by Defendant Horwich on behalf of Mayfair Administration, LLC, who was identified as Manager of Mayfair Holdings, LLP and witnessed by Tareq Hawasli. Defendant Mayfair Holdings, LLP is identified as the "Borrower" and Plaintiff Jood, Ltd. is identified as the "Lender."

57.     The November Promissory Note provides for an Interest Rate of twelve percent (12%), to be paid in quarterly payments starting in November, 2012, on "Interest Payment Dates" identified as September 30, December 31, March 31 and June 30 of every year.  The November Promissory Note further provides for a default interest rate of 5% for each day from an Event of Default until such Event of Default is cured.

58.      The November Promissory Note identifies an Event of Default as "… (i) the failure to make any Interest payment within five (5) business days of the applicable Interest Payment Date …" and "the commencement of any proceeding by or against the Borrower … if such proceedings shall remain undismissed for a period of sixty (60) days from the date of the commencement of the same;"

59.     The November Promissory Note further provides "… Borrower shall have thirty (30) days from the date such Event of Default first occurs to cure such Event of

15

Default." and a failure to cure such Event of Default shall allow "… Lender, at its option, may declare all Borrower's obligations under this Note immediately due and payable ..." The November Promissory Note further provides "… no failure or delay by Lender in exercising any right, option or remedy shall be deemed a waiver thereof ..."

60.    To date, no interest has been paid on the November Promissory Note. The total amount owed for missed interest is in excess of $180,000.  Missed default interest would equal approximately an additional $65,000.

61.    On or about January 10, 2017, written notice of default and demand for repayment under the November Promissory Note was made by Plaintiff Al-Rajhi to Defendants Evans, Horwich and Dutkiewicz.  As of the present date, no payments have been received and no formal response has sent by these Defendants.

62.    Based on present information, it is believed that the November Promissory Note was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

63.    On or about December 28, 2012, a Partnership Agreement entered into between Jood, Ltd. and Defendant Evans to form M & F Property Management, LLP ("M & F").  The Partnership Agreement provides that Evans and Jood, Ltd. are 50/50 owners of the partnership.  Defendant Evans is named as the initial Manager of the partnership.

64.    The M & F Partnership Agreement provides that the Manager, Defendant Evans, shall in his own discretion cause the partnership to make distributions.  Furthermore,

16

the Partnership Agreement provides that the books and records of the partnership shall be maintained at the principal office and each partner shall have the right to inspect and copy all books and records of the partnership.  Still further, the Partnership Agreement provides that each partner shall be provided with an annual financial report.

65.    Plaintiff Al-Rajhi has never been provided an annual financial statement from the partnership and his requests to inspect the books and records of the partnership have been ignored and/or refused.

66.    Based on present information, the M & F Partnership Agreement was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

67.    On or about November 30, 2012, M & F and Mayfair Holdings, LLP, entered into a Management Agreement, whereby M & F would manage properties owned by Mayfair Holdings, LLP.  The Management Agreement provides that M & F shall be paid for management of the properties an amount equal to 1% of Mayfair Holdings, LLP's Capital Value, with Capital Value equaling Mayfair Holdings, LLP's fair market value calculated on an annual basis.

68.    The Management Agreement specifically provided for M & F to be paid quarterly payments of $24,544.00 for the first year of operation, based on an initial Capital Value of Mayfair Holdings, LLP, of $9,821,814.00.

. . .

17

69.     To date, Plaintiffs have never received any distribution from M & F and have been provided with no information regarding the use of the quarterly payment specifically provided for in the Management Agreement.

70.     Based on present information, the Management Agreement was formulated and drafted by the joint efforts of Defendants Evans, Horwich and Dutkiewicz.

71.     Before loaning any money for the Mayfair Scheme or entering into any agreements concerning the Mayfair Scheme, Plaintiffs were repeatedly assured by Defendants Evans, Horwich and Dutkiewicz that they would be equal partners in the Mayfair Structure with Defendant Evans.

72.     On or around June, 2013, a representative of Defendants assured Plaintiffs that Jood, Ltd., "is an equal partner in the Mayfair Structure and has an equity stake of 50 percent of the appreciation of the venture."

73.     On or around June, 2013, Defendant Evans, through his business Evans and Randall, communicated with Plaintiffs in an effort to solicit additional funds, in an amount of $2,000,000.00, for a different investment scheme, referred to as the Sackville Street Project.

74.     On or about, January 2014, Defendant Evans, by and through his representative at Evans Randall, wrote to Plaintiff to confirm the structure of the Mayfair Scheme and attached a letter from Defendant Horwich confirming the same.  Specifically, Defendant Evans stated that Defendant Evans and Plaintiffs "are equal 50% partners."

. . .

18

75.     Defendant Horwich signed a letter dated January 14, 2014, on behalf of UK US Tax Services, LLP, a joint partnership between Defendants Horwich and Dutkiewicz, and addressed to Defendant Evans and a representative of Plaintiffs.  In the letter, Defendant Horwich confirmed the details of the Mayfair Scheme, stating: "MRE (Defendant Evans) has $2.25m of preferred interests and Fahad has $2.25m of the attached subordinated loan.  The idea is that both the subordinated loan and the preferred interests are repaid first and that the ordinary interests split the remaining profits.  It is intended that Fahad and MRE are in equivalent positions for all of the investment income here …".

76.     On or about September 2014, Defendant Evans sent an email to Plaintiff Al-Rajhi confirming that Plaintiff was a 50% partner in Mayfair Holdings, LLP, and stating that "as an equal partner you are entitled to 50% of the share of the balance of profits…"

77.     Defendant Horwich signed a letter dated March 29, 2016, individually and on behalf of Pitman Property Management, LLP, a partnership between Defendants Horwich and Dutkiewicz, in which the current status of the Mayfair Scheme was described.  Specifically, Defendant Horwich, by and on behalf of Pitman Property Managements, LLP, stated "the Mayfair Scheme consists of over 80 residential properties located in the Phoenix, Arizona area valued by Mr. Evans's staff at approximately $13.3M."  Furthermore, the letter stated "the Mayfair Venture has a small amount of cash on hand and has recently made loans to Mr. Evans or entities that he controls of approximately $2.9M.  Thus, the gross assets held by the Mayfair Venture are worth approximately $16.2M."

19

78.     Defendant Horwich's letter, dated March 29, 2016, further stated "the Mayfair Venture has begun selling the residential properties, with the intention … that the majority of all properties will be sold within the next 12 months and virtually all will be sold within 18 months."

79.     On or about November 2016, Defendant Evans represented in an email that the Mayfair portfolio has a value of "circa $11M and we are selling circa $1M of properties every month."  Defendant Evans further represented "[w]e expect to have sold all of the remaining portfolio (which currently compromises about 60 properties) by the middle of next year."  Still further, Defendant Evans represented "IRR's well in excess of 15% are being achieved. We can pay a 15% cash on cash return."

80.     On or about October 2016, Defendant Horwich and Pitman Property Management, LLP, withdrew from their representation of the Mayfair Group and Defendant Evans.  This withdrawal is a result of conversation between Defendants Horwich and Evans concerning Horwich's concern that Evans was over-borrowing on the Mayfair portfolio and withdrawing too much capital.  Despite having this concern raised by his close associate, Evans did not change his behavior.

81.     In a letter dated on or about October 2016, Defendant Horwich announced his withdrawal from the representation of the Mayfair Group, stating "I cannot determine whether Mr. Michael Evans is following the agreement you signed a few years ago."  Defendant Horwich's letter went on to explain various instances of Defendant Evans borrowing money on

behalf of the Mayfair Group and individually withdrawing money from the Mayfair Group that "significantly exceeds any profit entitlement that he has."

82.     On or about January 2017, Defendant Evans sent an email to Plaintiff Al-Rajhi, in an effort to address concerns that Plaintiff Al-Rajhi might have following the withdrawal of Defendant Horwich and in an effort to keep Plaintiff Al-Rajhi invested in the fraudulent scheme.  In part, the email stated that the Mayfair portfolio "has risen to circa $25M" and the lenders have achieved a "cash on cash return of 10%."  Defendant Evans further represented "the investors will achieve an annual return of around 20% pa and a Capital growth of 65% based upon the original acquisition cost."  Defendant Evans stated that the Mayfair Scheme was selling "some 6 properties per month" showing "a cash return per month of about $1.05M."

83.     In his email to Plaintiff Al-Rajhi, dated on or about January 2017, Defendant Evans further represented "the total figure remaining of circa $11M will go to repay yourself who is partner and Michael Evans himself."

84.     Each Mayfair entity herein described operated in connection with other entities, all of which were devised, set up, maintained and controlled by Defendants Evans, Horwich and Dutkiewicz to form the Mayfair Group.  The Mayfair Group existed to solicit and procure funds from individuals and maintain the appearance of a legitimate real estate investment venture.

. . .

21

85.   Horwich was a partner in Pitman Property Management, and had management responsibilities for the Mayfair portfolio.  As a partner in Pitman, Horwich had direct and regular access to the Mayfair bank accounts and provided legal advice and counsel to Defendants Evans and Dutkiewicz.  Horwich also played a role in working with accountants and outside attorneys to set up the Mayfair entities.  Horwich personally signed the June Promissory Note and November Promissory Note and Subscription Agreement given to Al-Rajhi, as a corporate representative of Mayfair.  Horwich was also designated the initial manager of Mayfair Administration, LLC.  Further, Horwich is designated as a representative of Aspen Services, LLC in at least one document.

86.   Dutkiewicz was a partner in Pitman Property Management with Horwich, and upon information and belief is involved with the creation of the agreements at issue and the management of the Mayfair properties. Further, upon information and belief, he had the same direct and regular access to the Mayfair bank accounts as Horwich, and also, individually, played a role as the accountant for the Mayfair Entities generally, and Defendant Evans specifically, and, among other acts, drafted and signed tax returns for and on behalf of the Mayfair entities.

87.   Upon information and belief, the Defendant Individuals have unilaterally made decisions to repay various investors in the Mayfair Scheme apart from Plaintiffs. . . .

22

88.     Upon information and belief, the Defendant individuals have made withdrawals from the accounts of the Mayfair entities and used such funds for personal expenses.

89.     Upon information and belief, the Defendant individuals have borrowed money on behalf of the Mayfair entities and used such funds for personal expense.

90.     Upon information and belief, the Defendant individuals have borrowed money on behalf of the Mayfair entities in violation of, and contradictory to, the relevant entity's Partnership Agreement.

91.     To date, Plaintiffs have not received any payments or distributions from M & F or Mayfair Holdings, LLP.

92.     To date, Plaintiffs have never been consulted by Defendant individuals on any of the financial transactions undertaken by the Mayfair entities.

93.     Upon information and belief, Mayfair's assets are entirely tied up in real estate located in the Phoenix area and said assets are in the process of being liquidated.

94.     To date, Defendants have made no payments on the June and November Promissory Notes.

## **COUNT I: BREACH OF CONTRACT – PROMISSORY NOTES**

95.     Plaintiffs incorporate, as if fully set forth herein, the facts and allegations contained in Paragraphs 21-94, above.

. . .

23

96.     Defendant Mayfair Holdings, LLP, through Defendants Evans and Horwich individually, entered into two Promissory Notes with Al-Rajhi—one individually for $2,250,000.00, and one with his solely-owned entity Jood, Ltd., for $250,000.00.

97.     Plaintiffs have fulfilled their obligations to Defendants under the Notes.

98.     As set forth in paragraphs 43 and 59, Defendants have defaulted under the Notes.

99.     As set forth in paragraphs 44 and 60, Plaintiffs have elected and do now elect to accelerate and declare immediately due and owing the entire unpaid principal balance together with accrued interest due and owing on the Notes.

100.    There is now due and owing to Plaintiffs from Defendants, the principal amount of $2,500,000.00, interest in the amount of approximately $1,635,000.00 through and including January 2018 at the Note rate, interest in the amount of $624,000.00, from September 30, 2012 through and including January 2018 at the default rate of 5% per annum, plus costs and attorneys' fees and any additional amounts to be proven at trial.

101.    Although demands have been made upon Defendants to pay the amounts due and owing on the Notes and/or cure the defaults thereunder, Defendants have failed to pay and continue to fail to do so.

## COUNT II: BREACH OF CONTRACT – PARTNERSHIP AGREEMENTS

102.    Plaintiffs incorporate, as if fully set forth herein, the facts and allegations contained in Paragraphs 21-94, above.

24

103.   Plaintiff Al-Rajhi entered into a Partnership Agreement with Defendant Mayfair Real Estate, LP, which is wholly-owned and controlled by Defendant Evans, to form Mayfair Holdings, LLP.

104.   Plaintiff Jood, Ltd., entered into a Partnership Agreement with Defendant Evans, individually, to form M & F Property Management, LLP.

105.   Plaintiffs have performed all obligations under the partnership agreements.

106.   Defendants breached the partnership agreements by refusing to pay Plaintiffs the agreed-upon compensation, refusing to provide Plaintiffs information required under the agreements and usurping the Partnerships' assets, operations, and business opportunities.

107.   As a direct and proximate cause of Defendants' breach, Plaintiffs have suffered economic damages in the form of lost business assets and opportunities, lost account receivables, unpaid past and future distributions, lost profits, and lost compensation in an amount to be proven at trial.

## COUNT III: BREACH OF FIDUCIARY DUTY

108.   Plaintiffs incorporate, as if fully set forth herein, the facts and allegations contained in Paragraphs 1 through 107.

109.   Plaintiff Al-Rajhi is a partner in Mayfair Holdings and, through Jood, Ltd., a 50% partner in M & F.

110.   Plaintiffs do not have a controlling interest nor managerial control of either entity.

25

111.   As a result of the partnership agreements herein referenced, Defendants owed fiduciary duties of loyalty, good faith, and fair dealing to Plaintiffs.

112.   In addition to the partnership agreements herein referenced, a special relationship existed between Plaintiffs and Defendants, such that Plaintiffs placed great trust and confidence in the Defendants.  As a result of this special relationship, Defendants owed fiduciary duties of loyalty, good faith, and fair dealings to Plaintiffs.

113.   Defendants have breached these fiduciary duties by one or more of the following ways: usurping and converting assets of the various partnerships; manipulating the partnerships' finances to Defendants' benefit and Plaintiffs' detriment; refusing to recognize Plaintiffs' partnership interest; barring Plaintiffs from operations of the enterprise; refusing to share profits with Plaintiffs; refusing to pay Plaintiffs the agreed-upon compensation; attempting to subordinate Plaintiffs' loans to fictional loans made by entities owned and controlled by Defendants; refusing to allow Plaintiffs access to accounting and financial records of the businesses; and engaging in intentional, reckless, or grossly negligent conduct adverse to Plaintiff's partnership interests.

114.   As a direct and proximate cause of Defendants' breach, Plaintiffs have suffered economic damages in the form of lost business assets and opportunities, lost account receivables, unpaid past and future distributions, lost profits, and lost compensation in an amount to be proven at trial.

. . .

26

**COUNT IV: UNJUST ENRICHMENT**

115.    Plaintiffs reallege paragraphs 1 through 114.

116.    Defendants were unjustly enriched by using false representations and deceit to induce Plaintiffs to make loans to Defendants under the auspices of agreeing to form Partnerships.

117.    As a direct and proximate cause of Defendants' breach, Plaintiffs have suffered economic damages in the form of lost business assets and opportunities, lost account receivables, unpaid past and future distributions, lost profits, and lost compensation in an amount to be proven at trial.

**COUNT V: BREACH OF CONTRACT – M & F PROPERTY MANAGEMENT AGREEMENT**

118.    Plaintiffs incorporate, as if fully set forth herein, the facts and allegations contained in Paragraphs 21-94, above.

119.    Plaintiff Jood is a 50% owner of M & F, which performs property management for Mayfair Holdings, LLP, in exchange for 1% of Mayfair Holding, LLP's total annual assets, to be paid quarterly.

120.    M & F has performed those duties, and upon information and belief, has been paid, but Plaintiff Jood has not received any portion of such payments, nor any other payments or distributions from M & F.

. . .

27

121.    Defendant Evans as 50% owner and Manager of M & F, has breached his contract with Jood by failing to pay Jood its 50% share of M & F revenues and profits.

122.    Jood is therefore entitled to damages as a result of this breach in an amount to be proven at trial.

## COUNT VI: BREACH OF FIDUCIARY DUTY FOR M & F

123.    Plaintiffs incorporate, as if fully set forth herein, the facts and allegations contained in Paragraphs 21-94, above.

124.    Defendant Evans is a 50% owner of M & F and is the manager of M & F.

125.    Defendant Evans owes a fiduciary duty to Jood.

126.    By failing to properly account for the business and pay Jood as required, Defendant Evans has breached his fiduciary duty to Jood.

127.    Jood is therefore entitled to damages as a result of this breach in an amount to be proven at trial.

## COUNT VII: THEFT

128.    Plaintiffs incorporate, as if fully set forth herein, the facts and allegations contained in Paragraphs 21-94, above.

129.    Upon information and belief, Evans has personally withdrawn funds from the various business entities, or has used corporate funds for personal purposes.

. . .

28

130.   These withdrawals or personal uses were done without corporate authority and to the detriment of the other shareholders and members of the businesses, including Plaintiffs.

131.   Such personal use and withdrawals constitute theft of corporate funds, which has caused special and direct harm to Plaintiffs both in terms of unpaid distributions but also in the inability or failure to pay on the loans and promissory notes held by Plaintiffs.

132.   Plaintiffs therefore are entitled to the damages resulting from this theft in an amount to be proven at trial.

## COUNT VIII: ACCOUNTING

133.   Plaintiffs incorporate, as if fully set forth herein, the facts and allegations contained in Paragraphs 21-94, above.

134.   Plaintiffs are part owners of Mayfair Holdings, LLP, and M & F.

135.   As owners, and pursuant to various agreements between Plaintiffs and Defendants, Plaintiffs are entitled to accountings of these businesses.

136.   Mayfair Finance is a wholly-owned asset of Mayfair Holdings, and therefore Plaintiffs are entitled to an accounting of Mayfair Finance as well.

137.   Plaintiffs hereby request that this Court order that such accountings be made and provided to Plaintiffs.

. . .

29

## COUNT IX – FRAUD BY DEFENDANT EVANS

138.    Plaintiffs reallege paragraphs 21 through 94.

139.    Defendant Evans knowingly and intentionally, or recklessly, made false representations with the intention that Plaintiffs would invest assets and goodwill into the Mayfair scheme and that Plaintiffs would remain invested in the Mayfair Scheme, when Defendant Evans had no intention of performing under the various agreements or otherwise compensating Plaintiffs.

140.    The false representations of Defendant Evans included, but are not limited to, promising Plaintiffs a specific minimum rate of return on their investment.

141.    Plaintiffs relied on Defendant Evans's misrepresentations to their detriment by acquiescing to Defendants' requests for investment and loans into the Mayfair Scheme.

142.    Plaintiffs also relied on Defendant Evans's misrepresentations to their detriment by acquiescing to Defendant Evans's requests to remain invested in the Mayfair Scheme.

143.    As a result, Plaintiffs have suffered, and continue to suffer, economic damages in the form of lost profits, lost business opportunities, and lost compensation in an amount to be proved at trial, plus pre and post judgment interest.

144.    Defendant Evans's actions alleged herein were performed with malice or with a reckless and outrageous indifference to a highly unreasonable risk of harm to Plaintiffs, and with a conscious indifference to the health, safety and welfare of others.

30

## COUNT X – FRAUD BY DEFENDANT HORWICH

145.   Plaintiffs reallege paragraphs 21 through 94.

146.   Defendant Horwich knowingly and intentionally, or recklessly, made false representations with the intention that Plaintiffs would invest assets and goodwill into the Mayfair scheme and that Plaintiffs would remain invested in the Mayfair Scheme, when Defendant Horwich had no intention of performing under the various agreements or otherwise compensating Plaintiffs.

147.   The false representations of Defendant Horwich to Plaintiffs included, but are not limited to, statements concerning the structure of the Mayfair Scheme and plans for the performance of the investment.

148.   Plaintiffs relied on Defendant Horwich's misrepresentations to their detriment by acquiescing to Defendants' requests for investment and loans into the Mayfair Scheme.

149.   Plaintiffs also relied on Defendant Horwich's misrepresentations to their detriment by acquiescing to Defendant Horwich's requests to remain invested in the Mayfair Scheme.

150.   As a result, Plaintiffs have suffered, and continue to suffer, economic damages in the form of lost profits, lost business opportunities, and lost compensation in an amount to be proved at trial, plus pre and post judgment interest.

. . .

31

151.   Defendant Horwich's actions alleged herein were performed with malice or with a reckless and outrageous indifference to a highly unreasonable risk of harm to Plaintiffs, and with a conscious indifference to the health, safety and welfare of others.

### COUNT XI – FRAUD BY DEFENDANT DUTKIEWICZ

152.   Plaintiffs reallege, and incorporate herein, paragraphs 21 through 94.

153.   Defendant Dutkiewicz knowingly and intentionally, or recklessly, made false representations with the intention that Plaintiffs would invest assets and goodwill into the Mayfair scheme and that Plaintiffs would remain invested in the Mayfair Scheme, when

154.   Defendant Dutkiewicz had no intention of performing under the various agreements or otherwise compensating Plaintiffs.

155.   The false representations of Defendant Dutkiewicz included, but are not limited to, valuations of the portfolio of the Mayfair Scheme.

156.   Plaintiffs relied on Defendant Dutkiewicz's misrepresentations to their detriment by acquiescing to Defendant Dutkiewicz's requests for investment and loans into the Mayfair Scheme.

157.   Plaintiffs also relied on Defendant Dutkiewicz's misrepresentations to their detriment by acquiescing to Defendant Dutkiewicz's requests to remain invested in the Mayfair Scheme.

. . .

32

158.   As a result, Plaintiffs have suffered, and continue to suffer, economic damages in the form of lost profits, lost business opportunities, and lost compensation in an amount to be proved at trial, plus pre and post judgment interest.

159.   Defendant Dutkiewicz's actions alleged herein were performed with malice or with a reckless and outrageous indifference to a highly unreasonable risk of harm to Plaintiffs, and with a conscious indifference to the health, safety and welfare of others.

## COUNT XII – PUNITIVE DAMAGES

160.   Plaintiffs incorporate by reference paragraphs 1-159, above, as if fully set forth herein.

161.   Defendants have acted with such bad faith and such wanton disregard for the rights of Plaintiffs that Plaintiffs are entitled to an award of Punitive Damages in an amount sufficient to deter Defendants from this kind of outrageous behavior in the future.

162.   Therefore, Plaintiffs are entitled to an award in an amount to be determined in the enlightened conscience of a jury.

## COUNT XIII – EXPENSES OF LITIGATION

163.   Plaintiffs incorporate by reference paragraphs 1-162, above, as if fully set forth herein.

164.   Defendants have acted in bad faith, been stubbornly litigious, and/or have caused Plaintiffs unnecessary trouble and expense, entitling Plaintiffs to recover their expenses of litigation, including reasonable attorneys' fees.

33

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, and each of them, and the following relief:

(a)     That this matter be tried before a jury;

(b)     For general and punitive damages in an amount to be determined at trial;

(c)     For a court-ordered accounting re Mayfair Holdings, M & F, and Mayfair Finance;

(d)     For costs incurred herein;

(e)     For reasonable attorneys' fees; and

(f)     For such other and further relief as the Court deems just and proper.

**DATED** this 21st day of February, 2018.

                                        SWENSON, STORER,
                                        ANDREWS & FRAZELLE, P.C.


                            By: */s/John W. Storer, III*
                                        John W. Storer, III
                                        Michael J. Frazelle
                                        7310 North 16th Street, Suite 320
                                        Phoenix, AZ  85020-5276
                                        *Attorneys for Plaintiffs*

34

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 21, 2018, I electronically filed the Complaint with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to any attorneys of record.

**DATED t**his 21st day of February, 2018.

SWENSON, STORER, ANDREWS
& FRAZELLE, P.C.


By: *<u>/s/John W. Storer, III</u>*
John W. Storer, III
Michael J. Frazelle
*Attorneys for Plaintiffs*

35