IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fahad Al-Rajhi and Jood, Ltd.,<br><br>                   Plaintiffs,<br><br>vs.<br><br>Mayfair Holdings, LLP, et al.,<br><br>                   Defendants. | No. 2:18-cv-0581-HRH |

O R D E R

Motion for Appointment of Receiver

Plaintiffs move for the appointment of a receiver, or, in the alternative for a preliminary injunction.[1] Although the Horwich defendants do not oppose this motion,[2] the motion is opposed by the Mayfair defendants.[3] Oral argument was not requested and is not deemed necessary.

Background

Plaintiffs are Fahad Al-Rajhi and Jood, Ltd. The Mayfair defendants are Mayfair Holdings, LLP; Mayfair Real Estate LP; Mayfair Finance Group, LLC; Mayfair Finance,

---

[1]Docket No. 41.

[2]Docket No. 45.

[3]Docket No. 44.

LLP; and Michael D. Evans. The Horwich defendants are Stuart Horwich, Leon Dutkiewicz, and Mayfair Administration, LLC.

Plaintiffs allege that in May 2012, Evans induced Al-Rajhi to invest in "a real estate scheme involving the purchase and resale of distressed real estate in and around Phoenix, Arizona."[4] On June 27, 2012, Al-Rajhi and Mayfair Real Estate, LP entered into a Partnership Agreement to form the entity Mayfair Holdings, LLP.[5] Mayfair Holdings was the entity which was going to purchase the Arizona real estate.[6]

Per the terms of the Partnership Agreement, Mayfair Real Estate owns 100% of the Class A shares of the partnership and Al-Rajhi and Mayfair Real Estate each own 50% of the Class B shares.[7] The Partnership Agreement provides that "[e]ach Partner . . . shall have the right during ordinary business hours and upon reasonable notice to inspect and copy (at such Partner's expense) all books and records of the Partnership."[8] The Partnership Agreement further provides that "[a]s soon as reasonably practicable after the end of each fiscal year of the Partnership, the Partnership shall cause to be prepared and delivered to each Partner all

---

[4]Complaint for Damages at 7-8, ¶¶ 22-23, Docket No. 1.

[5]Id. at 8, ¶ 25.

[6]Id. at 9, ¶ 27.

[7]Schedule A, Mayfair Holdings LLP Partnership Agreement, Exhibit E, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[8]Mayfair Holdings LLP Partnership Agreement at 14, ¶ 11.2, Exhibit E, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

information with respect to the Partnership necessary for the preparation of the Partner's Federal and state income tax returns."[9] And, the Partnership Agreement provides that withdrawals from the Partnership's bank account "shall be made only by persons authorized to do so by the Manager."[10] Mayfair Administration, LLC was named the initial manager,[11] but resigned as manager on November 30, 2012.[12] "Mayfair Real Estate currently serves as the manager of Mayfair Holdings."[13]

In June 2012, Al-Rajhi lent $2.25 million to Mayfair Holdings. This loan was memorialized in a promissory note dated June 27, 2012.[14] The June promissory note provides for interest at a rate of 12% to be paid quarterly beginning on June 30, 2012.[15] The June promissory note also provides for a default interest rate of 5% for each day from when a

---

[9] Id. at ¶ 11.3.

[10] Id. at ¶ 11.5.

[11] Id. at 9, ¶ 7.2.

[12] Declaration of Leon Dutkiewicz at 3, ¶¶ 10-11, appended to Defendants Mayfair Administration, LLC's, Stuart Horwich's, and Leon Dutkiewicz's Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 33.

[13] Declaration of Michael D. Evans [etc.] at 1, ¶ 2, Exhibit A, Mayfair Defendants' Response in Opposition to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 44.

[14] Complaint for Damages at 11, ¶ 40, Docket No. 1.

[15] Unsecured Subordinated Promissory Note at ¶ 2(a), Exhibit C, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

default occurs until the default is cured.[16] The June promissory note matures on June 26, 2019.[17] Plaintiffs allege that no interest has been paid on the June promissory note and that more than $1 million is due in interest and default interest.[18]

Also on June 27, 2012, Al-Rajhi, Aspen Services, and Mayfair Holdings entered into a Subordination Agreement.[19] The purpose of this agreement was to subordinate Al-Rajhi's $2.25 million loan to a loan that had been made by Aspen Services.[20] The Subordination Agreement provides that there will be no payments on Al-Rajhi's debt until the Aspen Services' debt is paid in full.[21] Plaintiffs allege, however, that Aspen Services never made the May 10, 2012 loan that is referenced in the agreement and that Mayfair Holdings does not owe a debt to Aspen Services.[22]

Also in June 2012, Mayfair Real Estate and Mayfair Holdings "entered into a Contribution Agreement whereby Mayfair Real Estate, LP, would transfer 100% of the interests in its wholly-owned subsidiaries, Mayfair Finance Group, LLP, and Mayfair

---

[16]Id. at ¶ 2(b).

[17]Id. at ¶ 1.

[18]Complaint for Damages at 12, ¶ 44, Docket No. 1.

[19]Exhibit B, Mayfair Defendants' Response in Opposition to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 44.

[20]Id. at HOR000023.

[21]Id. at HOR000025, ¶ 2.2(a).

[22]Complaint for Damages at 13, ¶ 48, Docket No. 1.

Finance, LLP to Mayfair Holdings, LLP, in exchange for all of the Class A Ordinary Interests in Mayfair Holdings, LLP."[23]

In November 2012, Al-Rajhi, through Jood, made a second loan to Mayfair Holdings, which was for $250,000, and which was memorialized by a promissory note dated November 30, 2012.[24] The November promissory note provides for an interest rate of 12% to be paid quarterly beginning on March 31, 2013.[25] The November promissory note also provides for a default interest rate of 5% for each day from when a default occurs until the default is cured.[26] The November promissory note matures on November 30, 2019.[27] Plaintiffs allege that no interest has been paid on the November promissory note and that more than $200,000 is due in interest and default interest.[28]

On December 28, 2012, Jood and Evans entered into a partnership agreement to form M & F Property Management, LLP.[29] "The Partnership Agreement provides that Evans and

---

[23]Id. at 10, ¶ 36.

[24]Id. at 15, ¶ 56.

[25]Unsecured Subordinated Promissory Note at ¶ 2(a), Exhibit D, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[26]Id. at ¶ 2(b).

[27]Id. at ¶ 1.

[28]Complaint for Damages at 16, ¶ 60, Docket No. 1.

[29]Id. at 16, ¶ 63.

Jood, Ltd. are 50/50 owners of the partnership."[30] Evans was named the initial manager of M & F Property Management.[31] Plaintiffs allege that "[t]he M & F Partnership Agreement provides that the Manager, [d]efendant Evans, shall in his own discretion cause the partnership to make distributions[,]" that "each partner shall have the right to inspect and copy all books and records of the partnership[,]" and "that each partner shall be provided with an annual report."[32]

M & F Property Management and Mayfair Holdings then entered into a Management Agreement, "whereby M & F would manage properties owned by Mayfair Holdings[.]"[33] "The Management Agreement provides that M & F shall be paid for management of the properties an amount equal to 1% of Mayfair Holdings, LLP's Capital Value, with Capital Value equaling Mayfair Holdings, LLP's fair market value calculated on an annual basis."[34] Compensation was to be paid quarterly and the Management Agreement further provides that "[f]or avoidance of doubt, a fee of $24,554 shall be payable upon the execution of this agreement, with quarterly fees due as of January 1, 2013 onwards."[35] At the time the

---

[30]Id.

[31]Id.

[32]Id. at 16-17, ¶ 64.

[33]Id. at 17, ¶ 67.

[34]Id.

[35]Management Agreement at ¶ 2.2, Exhibit H, Plaintiffs' Motion for Appointment of
(continued...)

Management Agreement was entered into, the fair market value of Mayfair Holdings was $9,821,814.[36] Al-Rajhi avers that he "has never received any distribution from M & F Property Management, LLP and has not been provided with any information regarding the use of funds specified as quarterly payments in the" Management Agreement.[37]

As of November 2016, the Mayfair real estate holdings in Arizona were estimated to be worth approximately $11 million and approximately $1 million worth of property was being sold every month.[38] In January 2017, Al-Rajhi sent a demand letter to Evans asking for payment of the amounts due under the promissory notes, an accounting of the financials and investments of the various Mayfair entities, a detailed list of the properties owned by the Mayfair entities from 2012 to present, detailed information about a settlement reached in litigation brought by another investor in the Mayfair real estate scheme, and detailed information about the ownership and management structure of the various Mayfair entities.[39] Al-Rajhi also demanded that the Mayfair entities "stop liquidation of any and all assets,

---

[35](...continued)
Receiver [etc.], Docket No. 41.

[36]Id. at ¶ 2.1.

[37]Declaration of Fahad AlRajhi in Support of Motion for Appointment of Receiver at 2, ¶ 5, appended to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[38]November 30, 2016 email from Evans to Khaled, Exhibit I, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[39]January 10, 2017 letter from David V. Hayes to Michael D. Evans at 4-5, Exhibit L, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

including real estate[,] until such time as Mr. Al Rajhi gives written permission for a liquidation to occur."[40]

In response, Evans referred to an oral agreement between himself and Al-Rajhi that Al-Rajhi "would be paid $7,500 per quarter, with the remaining amounts (the difference between what he was owed under the terms of the notes and what he actually received) to be re-invested in Mayfair Holdings, LLP."[41] Evans also advised that Mayfair Holdings currently owned about "60 properties with a value that is estimated to be approximately $10.2 million" and that it was anticipated that all properties would be sold by the end of 2018.[42] Evans also provided copies of "financial reports pursuant to Section 11.2 of the partnership agreements."[43]

Plaintiffs contend that Evans' response was insufficient and misleading and that Evans has continued to refuse to allow inspection and copying of the books and records of Mayfair Holdings and M & F Property Management. Al-Rajhi avers that "[d]espite numerous

---

[40]Id. at 5.

[41]Letter from Joseph G. Adams, Snell & Wilmer, to David V. Hayes, Owen, Gleaton, Egan, Jones & Sweeney, LLP, at 1-2, Exhibit M, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[42]Id. at 2.

[43]Id.

requests on my behalf to inspect and copy the books and records of the Mayfair entities, . . . I have never been provided any financial statements from the relevant Mayfair entities."[44]

Plaintiffs believe "that [the] real estate owned by the Mayfair structure is being sold or transferred by [d]efendant Evans without being properly accounted for, and that funds from such sales or transfers are being misused or misappropriated by [d]efendant Evans."[45] Plaintiffs "are concerned that [d]efendant Evans is mismanaging the funds of the Mayfair Scheme and [that he] has withdrawn amounts that significantly exceed the obligations of the Mayfair Entities[.]"[46] Al-Rajhi avers that he "understand[s] that [d]efendant Evans has made unilateral decisions to repay various investors in the Mayfair Scheme ahead of me and has made withdrawals from, and borrowed money on, the accounts of the Mayfair Scheme and used such funds for personal expense."[47] At the present time, plaintiffs believe that Mayfair only owns nineteen properties and that $8,346,000 worth of Mayfair properties have been sold since 2016.

On February 21, 2018, plaintiffs commenced this action. In their complaint, plaintiffs assert breach of contract, breach of fiduciary duty, unjust enrichment, theft, and accounting

---

[44]AlRajhi Declaration at 2, ¶ 4, appended to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[45]Id. at ¶ 6.

[46]Id. at 3, ¶ 10.

[47]Id. at ¶ 11.

claims against all the Mayfair defendants and a fraud claim against Evans. Plaintiffs seek general and punitive damages.

In their answer, the Mayfair defendants "admit that certain loans that had reached their maturity date have been repaid"and that "[d]efendant Michael Evans made withdrawals from certain Mayfair entities" but they "assert that these withdrawals were within the terms of any applicable agreements."[48] The Mayfair defendants also

> state that Mr. Evans obtained substantial additional funding for the various projects into which the Mayfair entities were investing, and he was required to personally guarantee additional sums that greatly exceeded the investments of . . . Al-Rajhi. A small portion of the funds obtained by Mr. Evans in connection with those personal guarantees, and not any funds obtained from . . . Al-Rajhi, were used for limited personal expenses.[[49]]

Plaintiffs now move for the appointment of a receiver. In the alternative, plaintiffs move for a preliminary injunction.

Discussion

"Under federal law, appointing a 'receiver is an extraordinary equitable remedy,' which should be applied with caution." Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2009) (quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. 1993)). "Receivership is a remedy of last resort; a receiver should not be

---

[48]Answer of Defendants Mayfair Holdings, LLP, Michael D. Evans, Mayfair Real Estate LP, Mayfair Finance Group, LLP and Mayfair Finance, LLP at 11-12, ¶¶ 87-88, Docket No. 31.

[49]Id. at 12, ¶ 89, Docket No. 31.

appointed if a less drastic remedy exists." Bracco v. Lackner, 462 F. Supp. 436, 456 (D.C. Cal. 1978).

There is 'no precise formula for determining when a receiver may be appointed.'" Canada Life Assur. Co., 563 F.3d at 844 (quoting Aviation Supply Corp., 999 F.2d at 316).

> Rather, federal courts consider a variety of factors in making this determination, including, for example: (1) "whether [the party] seeking the appointment has a valid claim"; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost, concealed, injured, diminished in value, or squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property"; and, (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership."

Id. (quoting Moore's, § 66.04[2][b]). "[N]o one factor is necessarily dispositive." Shepard v. Patel, Case No. CV–11–08146–PCT–NVW, 2012 WL 6019036, at *3 (D. Ariz. Nov. 27, 2012). It is within the court's discretion "whether to appoint a receiver[.]" Id. "'The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving final, equitable distribution of the assets as necessary.'" U.S. Commodity Futures Trading Com'n v. Khanna, Case No. 09CV1783 BEN (WVG), 2011 WL 805860, at *3 (S.D. Cal. March 1, 2011) (quoting Liberte Capital Group, LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006)).

valid claims. The Mayfair defendants argue that plaintiffs do not have valid claims, primarily because they contend that Evans and Al-Rajhi had an oral agreement which altered the terms of the promissory notes. Under Delaware law, which governs the promissory notes,[50] "[t]he general rule is that a written contract may be modified by subsequent oral agreement...." Reeder v. Sanford School, Inc., 397 A.2d 139, 141 (Del. Super. 1979). The Mayfair defendants offer Evans' declaration in support of their contention that there was an oral agreement between Evans and Al-Rajhi. Evans avers that

> [a]fter executing the [promissory] [n]otes, Mr. Al-Rajhi and I entered into an oral agreement to modify the interest provisions. In particular, we agreed that Mr. Al-Rajhi would receive payment of $7,500 per quarter and the remaining sum (the difference between the interest amount due under the initial terms of the Notes and the $7,500 payment) would be reinvested in Mayfair Holdings.[51]

Evans further avers that "Mr. Al-Rajhi and I acted in accordance with this agreement for several years. I ensured that the $7,500 sum was wired to Mr. Al-Rajhi each quarter. Mr. Al-Rajhi accepted the $7,500 without complaint and the internal records of Mayfair Holdings reflect that the remaining sums were reinvested."[52]

---

[50]June Promissory Note at 3, ¶ 10, Exhibit C; November Promissory Note at 3, ¶ 10, Exhibit D; Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[51]Evans Declaration at 2, ¶ 6, Exhibit A, Mayfair Defendants' Response in Opposition to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 44.

[52]Id. at ¶ 7.

The Mayfair defendants also argue that plaintiffs have not offered any evidence to support their allegations that any of the Mayfair defendants, and in particular Evans, are acting improperly. The Mayfair defendants remind plaintiffs that they have no managerial authority or oversight of the partnerships and the Mayfair defendants insist that the actions taken by Evans are within the power and authority provided to the manager under the partnership agreements.

Plaintiffs have valid claims. There is obviously a factual dispute as to what plaintiffs might be due under the terms of the promissory notes and whether Evans has acted improperly. But that does not mean that plaintiffs' claims are not valid. This factor weighs in favor of the appointment of a receiver.

fraudulent conduct. Plaintiffs argue that there is evidence that Evans has acted fraudulently, in the form of an email letter that Horwich sent to Evans and others informing them that he was no longer "able to represent the Mayfair Group of companies" because he could not "determine whether Mr. Michael Evans is following the [Mayfair] agreements . . . ."[53] Horwich made reference to a $6 million loan Evans had obtained on behalf of the Mayfair entities and two recent withdrawals from Mayfair accounts by Evans of $2 million and $2.9 million.[54] In response, the Mayfair defendants offer Evans' averment that "[a]ny

---

[53]Exhibit J at 1, Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

[54]Id. Horwich's email letter is consistent with a declaration he offers in support of the Horwich defendants' non-opposition. Docket No. 45.

and all business-related decisions I made on behalf of Mayfair Holdings and M & F Property Management LLP were made within my authority as manager of the partnerships."[55]

The foregoing illustrates that there are questions of fact as to whether there is any fraudulent conduct involved here. This factor weighs in favor of the appointment of a receiver.

imminent danger of loss. Plaintiffs acknowledge that most of the Mayfair properties have been sold, but they argue that they do not know if the remaining properties are being properly managed and thus "it is very likely that these properties will be damaged or otherwise diminished in value."[56] Plaintiffs also argue that unless a receiver is appointed, Evans will continue to use funds in the Mayfair bank accounts for his personal use and that these funds will never be recovered.

There is no evidence that the Arizona real estate is being mismanaged or damaged. Rather, the evidence shows that the Arizona real estate is being sold at a profit,[57] and the whole point of the Mayfair scheme, as even Al-Rajhi avers, was "to purchase real estate, rent the real estate and eventually sell the real estate."[58] Moreover, plaintiffs' claim of imminent

---

[55]Evans Declaration at 2. ¶ 12, Exhibit A, Mayfair Defendants' Response in Opposition to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 44.

[56]Plaintiffs' Motion for Appointment of Receiver [etc.] at 14, Docket No. 41.

[57]Exhibit K, Plaintiffs" Motion for Appointment of Receiver [etc.], Docket No. 41.

[58]AlRajhi Declaration at 2, ¶ 3, appended to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 41.

loss is belied by the fact that they waited for more than one year to commence this lawsuit after they received what they contend was an inadequate response to their January 2017 demand letter and by the fact that they waited four months to file the instant motion after they filed their complaint. This factor weighs against the appointment of a receiver.

adequacy of other legal remedies. Plaintiffs argue that unless a receiver is appointed, the Mayfair defendants will continue to divert funds from their intended business purpose and that this creates a danger of substantial waste and risk of loss for which there is no adequate legal remedy. Plaintiffs insist that the loss of the Mayfair entities' assets will leave the Mayfair defendants with no means to satisfy their obligations to plaintiffs, leaving plaintiffs without a remedy. Plaintiffs also suggest that they have no adequate legal remedy because real estate is unique property under the law. Plaintiffs cite to Sundance Land Corporation v. Community First Federal Savings and Loan Association, 840 F.2d 653 (9th Cir. 1988), in support of this argument. There, the plaintiff sought to enjoin the defendant from foreclosing on a fruit orchard that the plaintiff owned and operated. Id. at 655-56. The court noted that "[t]o establish equitable grounds for such relief, a claimant must show that he or she has no adequate remedy at law and that denial of the relief sought would cause immediate, irreparable injury." Id. at 661. The court concluded that "[s]ince the property at issue is unique, Sundance's legal remedy—i.e., damages—is inadequate." Id.

This case does not involve unique property. Plaintiffs are not seeking to hold on to a specific piece of real estate, as was the case in Sundance Land Corporation. Rather,

plaintiffs seek monetary damages and an accounting, both of which will be available to them should they prevail on their claims, even if the Arizona real estate has been sold. Because plaintiffs have other adequate legal remedies, this factor weighs against the appointment of a receiver.

<u>plaintiffs' harm versus the harm to the Mayfair defendants</u>. Plaintiffs argue that they will suffer great harm if a receiver is not appointed because it is likely that the Mayfair defendants will be unable to meet their obligations to plaintiffs if the Mayfair assets are lost. Plaintiffs argue that the Mayfair defendants will not suffer any harm if a receiver is appointed because they are not asking the Mayfair defendants to stop selling the Arizona real estate but rather that a receiver be appointed in order to ensure that the sale of the remaining property is done properly and that the funds from those sales are properly distributed.

There is no evidence that the Mayfair defendants would not be able to pay any judgment that might be entered against them should plaintiffs prevail on any of their claims. Moreover, it is likely that the appointment of a receiver will harm the Mayfair defendants as well as plaintiffs. As Evans avers, "[t]he imposition of a receiver would significantly and adversely affect [his] ability to manage and conduct the business activities of Mayfair Real Estate and the related entities and would deny the partners the benefit of their bargain."[59] And, as Evans avers, "[t]he expenses associated with a receiver would diminish the cash flow

---

[59]Evans Declaration at 2, ¶ 10, Exhibit A, Mayfair Defendants' Response in Opposition to Plaintiffs' Motion for Appointment of Receiver [etc.], Docket No. 44.

of the entities, reduce the profit margins on real property sales, and ultimately reduce partnership profits."[60] This factor weighs against the appointment of a receiver.

      <u>probability of success and irreparable injury</u>. Plaintiffs argue that their probability of success in this lawsuit is high, in light of the fact that the Mayfair defendants have admitted that they have not been complying with terms of the promissory notes and that Evans has misused funds. Plaintiffs also argue that they have a high probability of success on their accounting claim because the agreements at issue provide plaintiffs with the authority to review the books and records yet the Mayfair defendants are refusing to allow plaintiffs access to the books and records of Mayfair Holdings and M & F Property Management.[61] And, plaintiffs argue that they will suffer irreparable injury if a receiver is not appointed because the assets of the Mayfair entities are being squandered or lost.

      It is not at all clear that plaintiffs are likely to succeed on their claims because, as discussed above, there are questions of fact as to what plaintiffs are due under their agreements with the Mayfair defendants and whether there has been any fraudulent conduct on the part of Evans. The Mayfair defendants have also asserted affirmative defenses such as waiver and accord and satisfaction, which may have some merit. Plaintiffs may have some valid claims but all of plaintiffs' claims are disputed and the court presently has insufficient

---

[60]<u>Id.</u> at ¶ 11.

[61]In their opposition, the Mayfair defendants stated that they will make relevant financial documents available to plaintiffs once a protective order was entered in this case. The protective order was entered on August 7, 2018. Docket No. 47. Presumably, plaintiffs will soon be receiving the financial records that they seek as part of their discovery.

information to say that plaintiffs are likely to succeed on any of their claims. As for irreparable harm, plaintiffs have only alleged economic harm and "[i]t is well established . . . that . . . monetary injury is not normally considered irreparable." <u>Los Angeles Memorial Coliseum Commission v. National Football League</u>, 634 F.2d 1197, 1202 (9th Cir. 1980). This factor weighs against the appointment of a receiver.

<u>will plaintiffs' interest be well-served by receivership</u>. Plaintiffs argue that their interests will be well-served by the appointment of a receiver because a receiver will prevent waste and misuse of the Mayfair entities' assets, ensure a proper accounting, and protect plaintiffs' legal and equitable rights and remedies in the assets. However, it is just as likely that plaintiffs' interests would be harmed by the appointment of a receiver because it will make it more difficult for the Mayfair entities to do business and it will cause the partnerships to incur additional expenses. And, as noted above, plaintiffs should be able to obtain most, if not all, of the financial information that they are seeking through discovery. This factor weighs against the appointment of a receiver.

When all the factors are considered, the court concludes that appointing a receiver would not be appropriate here. While two of the factors weigh in favor of appointing a receiver, the majority of the factors weigh against such an appointment. Plaintiffs' motion for appointment of a receiver is denied.

In the alternative, plaintiffs move for a preliminary injunction. Plaintiffs seek to enjoin the Mayfair defendants from 1) issuing any checks or drafts without plaintiffs' express

written consent, 2) withdrawing any funds or deposits without plaintiffs' express written consent, 3) depositing any receipts in any bank account other than those maintained by or for the Mayfair defendant entities, and 4) selling or otherwise transferring any real properties owned by the Mayfair defendants unless the sale is approved by plaintiffs and the proceeds are paid into the registry of the court.

> A motion for a preliminary injunction requires that a plaintiff show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 759 (9th Cir. 2014) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "[P]reliminary injunctions are an 'extraordinary remedy never awarded as of right.'" Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (quoting Winter, 555 U.S. at 24).

Plaintiffs' motion for a preliminary injunction is denied. As discussed above, plaintiffs have not shown that they are likely to succeed on the merits of their claims, that they suffer irreparable harm if an injunction is not entered, or that the balance of equities tips in their favor.[62]

---

[62] The parties agree that the fourth factor is neutral because the injunction plaintiffs seek only impacts the parties and does not impact any non-parties. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138–39 (9th Cir. 2009).

Finally, if the instant motions are denied, the Mayfair defendants request that they be awarded their fees and costs incurred in responding to these motions pursuant to A.R.S. § 12.341 and 12.341.1. This request is denied. The matter of attorneys' fees and costs will be taken up when this case is finally resolved.

## Conclusion

Plaintiffs' motion for appointment of a receiver[63] is denied. Plaintiffs' alternative motion for a preliminary injunction[64] is also denied.

DATED at Anchorage, Alaska, this 16th day of August, 2018.

/s/ H. Russel Holland  
United States District Judge

---

[63] Docket No. 41.

[64] Docket No. 41.